AO 91 (Rev. 11/11) Criminal Complaint



Trial Attorney Claire Sobczak (202) 591-5418

FILED
7/23/2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

DJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

FAROOQ KHAN

CASE NUMBER: 23 CR 410

**UNDER SEAL**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about February 12, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, FAROOQ KHAN, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 1343 | having devised and intending to devise a scheme to defraud, and for obtaining money or property by means of false or fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, for the purpose of executing such scheme, namely, an electronic transmission of a PPP loan application on behalf of Company 1 |

This criminal complaint is based upon these facts:

_X_ Continued on the attached sheet.

JASON N COOK
Digitally signed by JASON N COOK
Date: 2023.07.23 09:57:28 -05'00'

JASON COOK
Special Agent
Homeland Security Investigations

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: July 23, 2023

_Judge's signature_

City and state: Chicago, Illinois

SUNIL R. HARJANI, U.S. Magistrate Judge

_Printed name and title_

UNITED STATES DISTRICT COURT                23 CR 410

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

I, JASON COOK, being duly sworn, state as follows:

1.      I am a Special Agent with Homeland Security Investigations ("HSI") and have been so employed since approximately September 2008.  I have received training in the area of money laundering and financial investigations and the various methods that individuals engaged in these violations use in an effort to conceal and launder the proceeds of their illicit activities.

2.      This affidavit is submitted in support of a criminal complaint alleging that FAROOQ KHAN has violated Title 18, United States Code, Section 1343, in connection with Paycheck Protection Program loans he caused an applicant to obtain for two businesses, Company 1 and Company 2.  Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging FAROOQ KHAN with wire fraud, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that FAROOQ KHAN committed the offense alleged in the complaint.

3.      This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, loan and banking records obtained from financial institutions, fact-of-filing information obtained from the Internal Revenue Service, and business registration and employment records obtained from state governmental agencies.

*Paycheck Protection Program Loans*

4.     The Coronavirus Aid, Relief, and Economic Security Act (the "Act") is a federal law enacted in or around March 2020 and designed to provide emergency assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $320 billion in additional funding for PPP loans.

5.     To obtain a PPP loan, a qualifying loan applicant was required to submit a signed PPP loan application to an approved lender.  The PPP loan application required the small business to provide financial information, acknowledge the program rules, and make certain affirmative certifications regarding its eligibility. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the business's eligibility and the amount of money it could receive under the PPP. The small business was also required to certify that it was in operation prior to February 15, 2020.

6.     PPP loan proceeds were required to be used by the business for certain permissible expenses—payroll costs, mortgage interest, rent, and utilities.  The PPP allowed the interest and principal on a PPP loan to be entirely forgiven by the U.S. Small Business Administration ("SBA") if the business spent the loan proceeds on

these items within a designated period of time and used at least a certain percentage of the PPP loan for payroll expenses. To obtain funds through the PPP, small businesses applied through lenders and loan service providers participating in the PPP, and if approved, received the loans from those lenders, either directly or through loan service providers. Participating lenders and loan service providers required applicants for PPP loans to provide truthful information about the business and its owner, including truthful information about the business's operating expenses, the business's employees, and how the PPP loan would be used, which information was material to lenders' approval, terms, and funding of loans.

*FAROOQ KHAN's Businesses*

7. Records obtained from the Illinois Secretary of State ("IL SOS") indicate that FAROOQ KHAN was listed on corporate filings for Hannan Tax Services, Inc. ("Hannan Tax") and Hannan Technologies, Inc. ("Hannan Technologies"). IL SOS records show that Hannan Tax was incorporated on November 5, 2018, and the incorporation papers listed "FAROOQ H A KHAN" as the registered agent and Individual A[1] as the president, secretary, and director. The registered office is designated as 1760 W. Devon Avenue, Suite 3, Chicago, Illinois 60660-1130. IL SOS records show that corporate filing fees for Hannan Tax were submitted electronically on November 6, 2020, and December 20, 2021, from IP address 67.165.185.18.[2]

---

[1] On April 22, 2023, an agent from Customs and Border Protection conducted a baggage inspection interview of FAROOQ KHAN and Individual A at O'Hare International Airport. During the interview, FAROOQ KHAN stated that Individual A was his spouse.

[2] This IP address is referenced throughout this affidavit. According to subpoenaed records from Comcast, subscriber information for the user(s) of IP Address 67.165.185.18 for the

8.     IL SOS records show that Hannan Technologies was incorporated on June 18, 2019, and listed "FAROOQ H A KHAN" as the registered agent and Individual A as the incorporator.  IL SOS records for Hannan Technologies further show that FAROOQ KHAN was listed as the registered agent, president, and director, and Individual A was listed as the secretary in corporate filings dated August 24, 2020, and September 21, 2021.  The registered office address is designated as 1760 W. Devon Avenue, Chicago, Illinois, 60660-1130.  IL SOS records show that corporate filing fees for Hannan Technologies were submitted on August 24, 2020, and September 21, 2021, from IP address 67.165.185.18.

9.     Bank records obtained from JP Morgan Chase indicate that account x7988 was opened on November 5, 2018, in the name of Hannan Tax (the "Hannan Tax account").  The records show that FAROOQ KHAN and Individual A are the sole signatories on the account.  FAROOQ KHAN is listed as the president and Individual A is listed as the secretary.  Handwritten signatures appear next to their names on the account signature page and both signatures are dated November 8, 2018.

10.     Bank records obtained from Wintrust Bank indicate that account x7764 was opened in the name of Hannan Technologies on February 5, 2021 (the "Hannan Technologies account"), and FAROOQ KHAN and Individual A are the sole authorized signers on the account.  Handwritten signatures appear under the "Authorized Signer" section of the account signature page, above the lines that state

---

events referenced in this affidavit were only retained for a limited time, and as of the time of the subpoena, were no longer available.

"Farooq H A Khan" and Individual A. Next to each handwritten signature is a handwritten date of February 5, 2021.

*FAROOQ KHAN's PPP Loan Scheme*

11.     As detailed below, from in or around January 2021 to in or around May 2021, FAROOQ KHAN solicited another—Individual B—to apply for PPP loans and open commercial bank accounts in the names of Company 1 and Company 2, which were non-operational businesses that had been registered in Individual B's name. Individual B, at FAROOQ KHAN's direction, then opened a bank account at Fifth Third Bank for Company 1 and at PNC Bank for Company 2. FAROOQ KHAN and Individual A entered false information about the number of employees and annual income and earnings at Company 1 and Company 2 in the PPP loan applications.

12.     On or about February 12, 2021, and March 30, 2021, two fraudulent PPP loan applications were electronically signed and submitted to SBA-approved lenders—Fifth Third Bank and PNC Bank—on behalf of Company 1 and Company 2, respectively, utilizing IP address 67.165.185.18, as further described below. These SBA-approved lenders approved PPP loans for Company 1 and Company 2 based upon the false information FAROOQ KHAN and Individual A entered in the loan applications, and PPP funds were then deposited into Company 1 and Company 2's bank accounts.

13.     To make Company 1 and Company 2 appear legitimate after they received the loans, and in order to qualify for SBA loan forgiveness, FAROOQ KHAN and Individual A wrote checks, drawn on Company 1's and Company 2's bank accounts, that were disguised as payroll and business expense disbursements. The

checks were issued from Company 1's bank account to Company 2's bank account, at times with "payroll" written in the memo line. However, as explained further below, neither Company 1 nor Company 2 was a legitimate business. In exchange for facilitating the loan applications and obtaining PPP loans for Company 1 and Company 2, FAROOQ KHAN and Individual A received commissions equal to approximately 20 percent of the loans that Company 1 and Company 2 received. The commissions from the receipt of both loans were deposited into the Hannan Technologies account.

*Individual B – PPP Loan Application for Company 1 and Company 2*

14.     On or about June 30, 2022, April 12, 2023, and May 1, 2023, law enforcement officers interviewed Individual B,[3] who described FAROOQ KHAN and Individual A's scheme to defraud the SBA using two companies that Individual B incorporated several years prior to the COVID-19 pandemic—Company 1 and Company 2. In summary and in part, Individual B stated the following:

---

[3] Individual B began cooperating with law enforcement officials in or around June 2022. In 2016, Individual B was charged in the Circuit Court of Cook County, Illinois, with continuing financial crimes/enterprise, defrauding a financial institution, misappropriation from a financial institution, and theft/unauthorized control. Individual B told investigators that he was required to pay restitution and serve two years of probation as a result of the charges. Through searches of law enforcement databases and coordination with the Cook County State's Attorney's Office, investigators were unable to confirm a disposition of the 2016 charges. Individual B is cooperating in the hopes of receiving consideration on potential charges related to his involvement in the loan fraud scheme described in this affidavit. As discussed below, information provided by Individual B has been corroborated by, among other things, witness interviews, a consensual search of Individual B's cellular phone, and records obtained from financial institutions and state governmental agencies. Accordingly, I believe the information provided by Individual B is reliable.

*Company 1*

a. Individual B has been very good friends with FAROOQ KHAN since childhood. FAROOQ KHAN owns a tax business and real estate business called Hannan Tax Services that he runs with Individual A at an office located near Devon Avenue and Ridge Boulevard in Chicago. In addition to Hannan Tax Services, KHAN and Individual A also own a company called Hannan Technologies.

b. FAROOQ KHAN told Individual B that he was able to obtain PPP loans for many of his clients, and Individual B asked FAROOQ KHAN if he could obtain a PPP loan for about $20,000, based on Individual B's employment with Uber. FAROOQ KHAN asked Individual B if Individual B owned any companies and told Individual B that they needed a company with an "old" employer identification number ("EIN") to get a PPP loan. When Individual B responded that Individual B did not own a company, FAROOQ KHAN asked about Individual B's father's company, Company 1. Individual B told FAROOQ KHAN that he had opened the business for his father but had never "renewed" the business or kept up with the paperwork after his father died. KHAN then offered to reactivate Company 1 and secure a PPP loan for Individual B, with the agreement that Individual B would pay 20 percent of the loan to FAROOQ KHAN and Individual A, as well as any fees associated with reactivating the company through the IL SOS. Individual B provided FAROOQ KHAN with Company 1's EIN, and FAROOQ KHAN and Individual A completed the paperwork necessary to reactivate Company 1's business registration. The signatures on the IL SOS paperwork, including the Statement of Change of

Registered Agent and Application for Reinstatement of Domestic Corporation, both filed on January 15, 2021, were not Individual B's.

c. In approximately January 2021, after reactivating Company 1 with IL SOS, FAROOQ KHAN directed Individual B to open an account at Fifth Third Bank, because Fifth Third could fund a PPP loan in 10 days. FAROOQ KHAN specifically directed Individual B to a Fifth Third branch in Skokie, Illinois, where Individual C was employed as the branch manager. FAROOQ KHAN directed Individual B to go to the branch where Individual C worked when it came time to apply for the PPP loan. Individual B opened an account at the Fifth Third location where Individual C worked, made an opening deposit of $100, and created an online banking account. Individual B then met with FAROOQ KHAN and provided FAROOQ KHAN with the paperwork, starter checks, account login, and password for the account. FAROOQ KHAN directed Individual B to deposit more money into the account prior to applying for the PPP loan. Individual B told FAROOQ KHAN that he did not have more money to deposit into the account, so FAROOQ KHAN provided Individual B with a check for $2,000 to deposit into the account.[4]

d. In addition to providing Individual B with an initial deposit, FAROOQ KHAN also provided Individual B with a post-it note containing the answers to questions that Individual C would ask during the loan application interview at Fifth Third Bank. These questions included what type of company Individual B had, how many employees worked at Individual B's company, and other questions regarding

---

[4] As described further below, bank records corroborate the timing and amount of this deposit. However, bank records indicate that the $2,000 deposit was in cash.

the company's revenue. When Individual C asked these questions, Individual B responded using the information FAROOQ KHAN had written on the post-it note and told Individual C that Company 1 was a marketing and consulting firm that employed seven people. Individual B estimated that Individual C completed the application in about five minutes. After Individual C completed the interview, Individual C told Individual B that Individual B also needed to submit supporting documentation for the PPP loan application. Individual B did not provide any supporting documentation to FAROOQ KHAN. Instead, FAROOQ KHAN and Individual A prepared all the paperwork, including the supporting documentation, for Company 1's loan. FAROOQ KHAN and Individual A also e-signed and submitted the loan application.[5]

e. After the loan was funded, FAROOQ KHAN directed Individual B to sign approximately 10 blank checks so FAROOQ KHAN could "show payroll," so that Company 1's loan could be forgiven. FAROOQ KHAN told Individual B that every two weeks FAROOQ KHAN or Individual A needed to write checks to other companies to give the appearance that these other companies were payroll companies distributing payroll checks to Company 1 employees.

*Company 2*

f. In approximately March 2021, FAROOQ KHAN asked if Individual B wanted to apply for an additional PPP loan using Company 2. Individual B explained to FAROOQ KHAN that Company 2 was incorporated for a cleaning business he

---

[5] Fifth Third Bank records show that Company 1's PPP loan application was electronically signed from a computer using IP address 67.165.185.18 on February 12, 2021, and Company 1 received PPP loan funds deposited in the amount of $141,592 on February 16, 2021.

planned to open with another person, but it was never operational and was not in good standing with the state. Individual B asked FAROOQ KHAN if he needed the other person's permission to apply for a PPP loan, since that person was listed as a director in the Articles of Incorporation. FAROOQ KHAN replied that he did not. Later, at FAROOQ KHAN's direction, Individual B sent FAROOQ KHAN the EIN for Company 2.[6]

g. FAROOQ KHAN subsequently directed Individual B to open a commercial bank account in the name of Company 2 at PNC Bank. FAROOQ KHAN stated he planned to apply for a PPP loan for Company 2 through PNC Bank because they were processing PPP loan applications faster and asking fewer questions. Individual B took records for Company 2 to a PNC Bank branch near the Hannan Tax office and opened a bank account. A few days later, Individual B returned to the Hannan Tax office and met with FAROOQ KHAN. During the meeting, FAROOQ KHAN used his laptop computer to submit a PPP loan application for Company 2. At this time, FAROOQ KHAN asked Individual B to provide names of fictitious employees for inclusion on the PPP loan application. Individual B gave FAROOQ KHAN names of friends or associates from his Facebook account for this purpose. Individual B also informed FAROOQ KHAN that he had never filed tax returns for Company 2. As a result, FAROOQ KHAN had to generate false tax forms as required supporting documentation for the Company 2 PPP loan application.

---

[6] A consensual review of Individual B's cellular phone confirmed that Individual B sent an email to FAROOQ KHAN on March 11, 2021, containing the following documents relating to Company 2: an IRS EIN assignment notice, Illinois Department of Revenue Business Registration Application, and IL SOS Articles of Incorporation.

h. Individual B learned that the Company 2 PPP application was approved, and the funds were deposited into the PNC Bank account in the name of Company 2.[7] At FAROOQ KHAN's request, Individual B also signed approximately eight blank checks and gave them to FAROOQ KHAN for use in the same scheme involving payroll disbursements designed to make Company 2 appear legitimate.

i. At some point after the Company 2 PPP loan was funded, FAROOQ KHAN told Individual B that the PPP loan proceeds in Company 2's PNC Bank account (and several other PNC Bank accounts owned by FAROOQ KHAN's clients who received PPP loans) had been frozen. When a PNC Bank investigator contacted Individual B, FAROOQ KHAN instructed Individual B to tell the investigator that Company 2 was providing industrial cleaning services to factories during the COVID-19 pandemic and that the hold on his account was hurting his business. FAROOQ KHAN then directed Individual B to withdraw all funds from the account at PNC Bank in excess of the amount of frozen PPP funds. FAROOQ KHAN told Individual B to open a new Company 2 account at Fifth Third Bank and deposit the money there.[8]

j. Around this time, FAROOQ KHAN also agreed to process a PPP Second Draw Application for Company 1 and waived his commission because Company 2's PPP loan proceeds had been frozen. Individual B learned that FAROOQ KHAN had

---

[7] PNC Bank records show that Company 2's account received a PPP loan deposit in the amount of $148,500 on March 31, 2021.

[8] Fifth Third Bank and PNC Bank records indicate that Individual B did not follow FAROOQ KHAN's direction to open a new bank account at Fifth Third bank; rather, PNC Bank records show that Individual B repaid the loan amount of $148,500 to PNC Bank.

submitted the Second Draw Application for Company 1 after receiving emails from Fifth Third Bank about the PPP loan. After receiving the emails, Individual B went to the Hannan Tax office and met with FAROOQ KHAN and/or Individual A to electronically sign the loan documents for the Second Draw Loan for Company 1.

*PPP Application and Additional Documentation for Company 1*

15.     According to records received from Fifth Third Bank, Individual B electronically certified a loan application for Company 1 on February 12, 2021, that sought a PPP loan in the amount of $141,592. The loan application for Company 1 identified Individual B as its 100 percent owner and president, and its principal place of business as 6410 N. Talman Avenue, Chicago, Illinois. PPP loan records for Company 1 stated that, as of approximately February 12, 2021, it had seven employees and incurred an average monthly payroll of $56,637. The application further indicated that Company 1 had filed Articles of Incorporation with IL SOS on April 24, 2015, with the purported owner of the corporation, Individual B, designated as the initial registered agent. The application also included Company 1's taxpayer identification number (its EIN). Company 1's PPP loan records also included purported IRS Forms 940 and 1120, stating that Company 1 made $679,651 in salary/wage or total payments to all employees in tax year 2020. Loan application records show that Individual B certified this same information in an application for a Second Draw Loan for Company 1 on April 30, 2021, which sought the same amount of $141,592. These records also show that Company 1's applications and certifications for both the First Draw Loan and Second Draw Loan were all submitted electronically from IP address 67.165.185.18.

16.     Fifth Third records show that the SBA disbursed Company 1's First Draw Loan Application in the amount of $141,592 on February 16, 2021.  The records show that SBA approved Company 1's Second Draw Loan application, also in the amount of $141,592, on May 3, 2021.  Both deposits were made into Company 1's Fifth Third Bank account x8645 ("Company 1's account").

17.     IL SOS records show that Company 1 was incorporated, with Individual B listed as the Registered Agent and a Director, on April 24, 2015; Company 1 was dissolved for failure to pay a franchise tax and file annual reports on September 9, 2016; and a Statement of Change of Registered Agent, Application for Reinstatement of Domestic Corporation, and Domestic Annual Reports for the years 2016 to 2020 were filed for Company 1 on January 15, 2021. The reports filed to reinstate Company 1 listed Individual B as its sole Officer/Director and Registered Agent.   IL SOS records show that corporate reinstatement fees were paid electronically for Company 1 on September 21, 2021, from IP address 67.165.185.18.

18.     As noted above, two purported IRS tax documents were submitted in support of the PPP loan application for Company 1, according to records obtained from Fifth Third Bank. One, an IRS Form 940 (Employer's Annual Federal Unemployment ("FUTA") Tax Return) for 2020 indicated on line 3 that Company 1's payments to all employees totaled $679,651 and computed its FUTA tax, before adjustments, as $294. The second, an IRS 1120 (U.S. Income Tax Return for an S Corporation) for 2020 identically stated on line 13 that Company 1's salaries and wages totaled $679,651.

19.     According to information obtained from the IRS, however, it has no record that Company 1 (identified by its taxpayer identification number) filed an IRS Form 940 for tax years 2018 through 2022.  Additionally, the IRS has no record that Company 1 filed an IRS Form 1120-S for tax years 2018 through 2022. The IRS also does not have a record indicating that Company 1 filed an IRS Form W-3 in 2018, 2019, or 2022 to report employee income to the government.  However, the IRS does have records indicating that Company 1 filed an IRS Form W-3 in 2020 and 2021.

20.     Additionally, the Illinois Department of Employment Security ("IDES"), which oversees the administration of state unemployment benefits,[9] reported that it had no records of an unemployment insurance account or quarterly wage filings for Company 1 between January 2019 and May 2022.

21.     Fifth Third Bank records show that Company 1's account was opened on January 22, 2021.  On February 9, 2021, an initial cash deposit of $2,000 was deposited into the account.  On February 16, 2021, SBA's First Draw Loan in the amount of approximately $141,592 was deposited into Company 1's account.  On March 4, 2021, a check in the amount of $31,200—approximately 22 percent of the First Draw Loan amount—was made out to Hannan Technologies.  This check was deposited into the Hannan Technologies account on March 8, 2021.

---

[9] According to the IDES website, all newly created businesses must register with IDES within 30 days of start-up.  *See* https://ides.illinois.gov/employer-resources/taxes-reporting/are-you-a-new-employer-register.html (last visited June 24, 2023).  The website also indicates that most for-profit employers are required to pay unemployment insurance contributions as soon as they have: (i) paid $1,500 in wages in a single calendar quarter, or employed one or more persons for 20 weeks in a given calendar year; or (ii) paid $1,000 in cash wages in one calendar quarter for domestic work; or (iii) paid $20,000 in cash wages in one calendar quarter or employed 10 or more workers for 20 weeks in a given calendar year for farm work.  *See* https://ides.illinois.gov/employer-resources/taxes-reporting.html (last visited June 24, 2023).

22. Fifth Third Bank records show that SBA's Second Draw Loan in the amount of approximately $141,592 was deposited into Company 1's account on May 3, 2021. Between March 1, 2021, and July 15, 2021, a total of nine checks were written from Company 1's account, including one check to Individual B and four checks to Company 2. The check from Company 1's account to Individual B, as well as two of the four checks written from Company 1's account to Company 2, included the term "payroll" written in the memo line. The four checks made out to Company 2 were dated between March 17, 2021, and May 3, 2021, and totaled $108,650.

*PPP Application and Additional Documentation for Company 2*

23. According to records received from PNC Bank, a PPP loan application was submitted on behalf of Company 2, with Individual B listed as the applicant, on March 18, 2021. The loan application indicated that Company 2 was a C-Corporation that was established in 2016.

24. The loan application identified Individual B as the President and 100 percent owner of Company 2. According to the application, the principal place of business of Company 2 was 6410 N. Talman Avenue, Chicago, Illinois. The application also included Company 2's taxpayer identification number (its EIN) and its business telephone number.

25. According to the loan application, Company 2 had eight employees, and its average monthly payroll was $59,500. Based upon the PPP loan program rules, the applicant sought a loan of $148,500, which was 2.5 times Company 2's purported average monthly payroll. The applicant indicated that the loan proceeds would be

used for payroll, covered supplier costs, and covered worker protection expenditures. PNC Bank approved Company 2's PPP loan on or about March 30, 2021.[10]

26.     PNC Bank records indicated that one purported IRS Form 940 (Employer's Annual Federal Unemployment (FUTA) Tax Return) for 2020 was submitted with Company 2's application. This form indicated on line 3 that Company 2's payments to all employees totaled $718,284 and computed its FUTA tax before adjustments as $336.

27.     PNC Bank provided an Electronic Evidence Summary with an audit trail that detailed all electronic submissions for Company 2's PPP loan application. The audit trail includes seven entries, each of which was submitted on March 30, 2021, from IP address 67.165.185.18. The first of the seven submissions also indicates that the submission was linked to a phone number known to be Individual B's cell phone. In addition, the third of seven submissions states that the "signing session for recipient" was linked to an email address known to be Individual B's email address that is linked to Individual B's cell phone.

28.     IL SOS records show that Company 2 was incorporated with Individual B listed as a director on February 17, 2016. Company 2 was dissolved for failure to pay a franchise tax and file annual reports on July 14, 2017, and an Application for Reinstatement of Domestic Corporation, and Domestic Annual Reports for the years 2017 to 2021 were filed for Company 2 on March 18, 2021. The

---

[10] At this time, PPP lenders, such as PNC Bank, transmitted borrowers' PPP loan applications to the SBA, which conducted an initial processing of the applications on computer servers located in the state of Oregon. After the initial processing was concluded in Oregon, data relating to the PPP loan were sent by SBA to servers located in the state of Virginia for further processing.

reports filed to reinstate Company 2 listed Individual B as the sole Officer/Director. IL SOS records show that annual filing fees were submitted electronically for Company 2, from IP address 67.165.185.18, on March 16, 2021.

29. According to information obtained from the IRS, it has no record that Company 2 (identified by its taxpayer identification number) filed an IRS Form 940 for tax years 2018 through 2022. Additionally, the IRS has no record that Company 2 filed an IRS Form 1120 for tax years 2018 through 2022. The IRS also does not have a record indicating that Company 2 filed an IRS Form W-3 in 2018 through 2022 to report employee income to the government.

30. Additionally, IDES reported that it has no records of an unemployment insurance account or quarterly wage filings for Company 2 between January 2019 and May 2022.

31. PNC Bank records for Company 2 show that account x2702 was opened on March 18, 2021, with an initial deposit of $100.00 ("Company 2's account"). On March 31, 2021, Company 2's account received a PPP loan deposit in the amount of $148,500.

32. PNC Bank records show that Company 2's account received four checks from Company 1's account, consistent with the Company 1 account records described in paragraph 22. In this regard, Company 2's account received four checks that totaled $108,650, and were dated between March 17, 2021, and May 3, 2021. The checks dated April 3, 2021, and April 16, 2021, stated "payroll" in the memo lines. These four checks are depicted below.









19

33.     PNC Bank records also show a check made out to Hannan Technologies in the amount of $31,300—approximately 21 percent of the PPP loan to Company 2—dated April 4, 2021.  Wintrust Bank records show that this check was deposited into the Hannan Technologies account on April 15, 2021.

34.     PNC Bank records show that, at Individual B's request, $148,500—the full amount of Company 2's PPP loan—was debited to PNC Bank on May 20, 2021, in order to pay off the loan.

*Preliminary tracing of the PPP loan fraud proceeds*

35.     Wintrust Bank records show that a check from the Hannan Tax account in the amount of $500 was made out to "Hannan Technologies, Inc.," and was deposited into the Hannan Technologies account on February 5, 2021.  As discussed above, FAROOQ KHAN and Individual A were the sole signatories on both the Hannan Tax and Hannan Technologies accounts.



36.     According to Wintrust records, a check from Company 1's account dated March 4, 2021, and made out in the amount of $31,200, was deposited into the Hannan Technologies account on March 8, 2021.  Individual B confirmed that this was the 20 percent commission check that FAROOQ KHAN and Individual A received in exchange for obtaining a fraudulent PPP loan on behalf of Company 1.



37.   Wintrust records further show that a check from Company 2's account

dated April 14, 2021, and made out in the amount of $31,300, was deposited into the

Hannan Technologies account on April 15, 2021.

## CONCLUSION

38.    Based upon the foregoing facts, I submit that there is probable cause to believe that FAROOQ KHAN committed the wire fraud offense as alleged in the Complaint.

FURTHER AFFIANT SAYETH NOT.

JASON N COOK
Digitally signed by JASON N COOK
Date: 2023.07.23 09:56:18 -05'00'

JASON COOK
Special Agent, HSI

SWORN TO AND AFFIRMED by telephone July 23, 2023

Honorable SUNIL R. HARJANI
United States Magistrate Judge

23